IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 16-cv-1663-WJM

WHITNEY HOUSER,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

---

# ORDER AFFIRMING DECISION OF ADMINISTRATIVE LAW JUDGE

---

This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Whitney Houser ("Houser") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying her application for supplemental security income benefits and disability insurance benefits. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Houser was not disabled within the meaning of the Social Security Act. This appeal followed.

For the reasons set forth below, the ALJ's decision is affirmed.

## I. BACKGROUND

Houser was born on September 13, 1962, and was 47 years old on the alleged onset date of June 7, 2010. (Administrative Record ("R.") (ECF No. 11) at 86.) Houser graduated from high school, completed two years of college, attended an electrician's trade school, and served in the United States Navy for approximately three years.

---

[1] Nancy Berryhill is automatically substituted for Carolyn Colvin under Federal Rule of Civil Procedure 25(d).

(R. at 2792.) In the last fifteen years, she has worked as an electrician. (R. at 89.)

Houser applied for disability benefits and supplemental security income on October 30, 2014. (R. at 86.) Houser claimed that she is disabled due to the following conditions: back pain, traumatic brain injury, and torn rotator cuffs in both the left and right shoulders. (*Id.*) Her application was denied on February 24, 2015. (R. at 110.) Houser requested and received a hearing in front of an ALJ, Terrence Hugar. (R. at 15.) On February 1, 2016, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[2]

At step one, the ALJ found that Houser had not engaged in substantial gainful activity since June 7, 2010. (R. at 23.)

At step two, the ALJ found that Houser suffered from

> the following severe impairments: degenerative disc and joint disease associated with the spinal column; bilateral rotator cuff tendinopathy; diabetes mellitus; mood disorder; cognitive disorder related to a December 2013 traumatic brain injury; Post-Traumatic Stress Disorder (PTSD); and a history of alcohol abuse.

(*Id.* (citations omitted).)

At step three, the ALJ found that Houser's impairments, while severe, did not meet or medically equal any of the impairments listed in the Social Security regulations. (R. at 24–27.)

---

[2] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988.) The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Before proceeding to step four, the ALJ assessed Houser's residual functional capacity ("RFC"). The ALJ concluded that Houser has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the work should be with occasional posturals[3] except for no crawling or climbing of ladders, ropes or scaffolds. The claimant should have no exposure to hazards, such as unprotected heights and moving mechanical parts. There should be no operation of motor vehicles. The claimant is limited to frequent reaching in all directions except overhead reaching which is limited to occasional. The claimant can never overhead lift more than 10 pounds. The claimant is limited to frequent pushing and pulling. The claimant must be limited to simple, routine and repetitive tasks. The tasks must entail no more than occasional interaction with supervisors, coworkers and the public.

(R. at 27.) Then, at step four, the ALJ concluded that Houser could not perform her past relevant work as an electrician. (R. at 36.)

At step five, the ALJ found that Houser's RFC permitted her to work as a small parts assembler, of which there are 1,800 jobs in Colorado and 191,000 jobs in the United States; and as a conveyor line bakery worker, of which there are 760 jobs in Colorado and 43,400 jobs in the United States. (R. at 36–37.)

Accordingly, the ALJ found that Houser was not entitled to Social Security benefits. (R. at 37.) Houser appealed to the Socials Security Appeals Council (R. at 15), which denied review (R. at 1). Houser then filed this action seeking review of the ALJ's February 1, 2016 decision. (ECF No. 1.)

## II. STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial

---

[3] The ALJ defined "posturals" as "climbing ramps and stairs, climbing ladders and scaffolds, balancing, stooping, kneeling, crouching, and crawling." (R. at 72.)

evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. ANALYSIS

### A. Accounting for Dr. Malmstrom's Assessment

Houser argues that the ALJ's RFC does not properly account for the report of Dr. Frederick Malmstrom, Ph.D., a consultative psychological examiner.

#### 1. Dr. Malmstrom's Report

Dr. Malmstrom observed a range of behavior from Houser, including that "[o]rganization and character speech went into rambling and spontaneous processes nonstop. Thought processes ranged between organized and disorganized." (R. at 2793.) Houser also "exhibit[ed] specific deficits with visual memory, and impaired immediate memory, deficits consistent with acute, localized traumatic brain injury" (R. at 2795), referring to an incident in 2013 when Houser was assaulted and pistol-whipped in the head (R. at 2792). Houser reported that "she would like to get her hands on the

4

man who pistol-whipped her," but Dr. Malmstrom concluded that "[s]he is not presently a threat to herself or others." (R. at 2794.)

Dr. Malmstrom's concluding narrative states that Houser

> is a certified and licensed professional electrician, [but] she is unable to maintain concentration and exhibits considerable confusion when given complex problems. She is a very pleasant and likable lady who would very much like to return to her work [as an electrician], but she becomes easily disoriented and confused. She is able to follow 1- and 2-step simple instructions [but] has difficulty in following complex instructions. She is capable of cooperating with both supervisors and coworkers, but in consideration of her cognitive deficits and emotional swings, she could well present herself as a danger to herself or others in a normal workplace setting.

(R. at 2796.)

As part of his report, Dr. Malmstrom also filled out a "Medical Source Statement of Ability to Do Work-Related Activities (Mental)." (R. at 2797.) In the portion of the Statement regarding ability to understand, remember, and carry out instructions, Dr. Malmstrom opined that Houser had no limitations in her ability to understand and remember simple instructions; no limitations in her ability to carry out simple instructions; no limitations in her ability to make judgments on simple work-related decisions; a marked limitation in her ability to understand and remember complex instructions; a moderate limitation in her ability to carry out complex instructions; and a moderate limitation in her ability to make judgments on complex work-related decisions. (*Id.*) In a narrative explanation of his opinions, Dr. Malmstrom once again raised the question of Houser's supposed dangerous potential:

> Results [of testing] indicated she has a severe memory deficit in immediate visual memory and moderately degraded processing speed, all subsequent to traumatic brain injury

5

> suffered in 2013. In addition, she has periods of confusion
> and spatial disorientation. Under these conditions, she could
> well be a danger to herself or others in workplace settings.

(*Id.*)

In the portion of this same statement regarding ability to interact appropriately with supervisors, co-workers, and the public, Dr. Malmstrom opined that Houser has no limitations in her ability to interact appropriately with the public; no limitations in her ability to interact appropriately with supervisors; and moderate limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 2798.)[4] In a narrative explanation of these opinions, Dr. Malmstrom reported that a mental status exam "indicates periods of confusion and frustration with instantaneous mood swings as to her recognized inability to perform at her previous level of skill." (*Id.*)

2. Dr. Malmstrom's "Danger" Opinions

In a one-sentence argument, Houser asserts that the ALJ did not properly formulate her RFC because "[b]eing a danger to one's self and others is not equivalent to the restriction of occasional contact with others." (ECF No. 14 at 10.) In other words, Houser contends that the portion of the RFC regarding "no more than occasional interaction with supervisors, coworkers and the public" (R. at 27) does not adequately account for Houser's apparent dangerousness. Moreover, for the first time in her reply brief (which is substantively all of two pages long) Houser asserted that "[i]f the ALJ felt the opinion was ambiguous, he should have re-contacted Dr. Malmstrom under

---

[4] This portion of the form also contains a line for the examiner to specify the claimant's ability to interact appropriately with co-workers. For unexplained reasons, Dr. Malmstrom left that line blank. But Dr. Malmstrom's narrative report specifically says that Houser "is capable of cooperating with . . . coworkers." (R. at 2796.)

20 C.F.R. § 404.1512(e) [*sic*; correct cite is 20 C.F.R. § 404.1520b(b)(2)(i)]." (ECF No. 18 at 3.) In the interest of justice, the Court ordered the Commissioner to file a surreply as to this argument (ECF No. 23), and the Commissioner complied (ECF No. 24).

Having reviewed all of the arguments, the Court agrees with the Commissioner that Dr. Malmstrom's opinions regarding dangerousness are specifically in the context of Houser's ability to return to work as an electrician. For example, he notes that Houser "would very much like to return to her work [as an electrician], but she becomes easily disoriented and confused." (R. at 2796.) He immediately goes on to note limitations stemming from her disorientation and confusion, but also opines that she can interact appropriately with supervisors and coworkers. (*Id.*) However, "in consideration of her cognitive deficits and emotional swings"—the same limitations and symptoms he has been discussing in the context of her ability to continue as an electrician—"she could well present herself as a danger to herself or others in a normal workplace setting." (*Id.*) This context is further clarified in Dr. Malmstrom's Medical Source Statement, where he specifically notes that Houser suffers from "periods of confusion and frustration with instantaneous mood swings as to her recognized inability to perform at her previous level of skill," *i.e.*, to return to work as an electrician. (R. at 2798.)

Thus, Dr. Malmstrom's statements regarding dangerousness were not something the ALJ failed to properly account for in his RFC. The ALJ committed no reversible error in this regard.

       3.    <u>Ability to Handle a Changing Workplace Environment</u>

Houser offers another one-sentence attack on the RFC assessment. Referring to the ALJ's finding that Houser's work responsibilities "must entail no more than

7

occasional interaction with supervisors, coworkers and the public" (R. at 27), Houser argues that "[l]imited contact also does not fully address the limitation in handling change in the workplace" (ECF No. 14 at 10). The "limitation in handling change" derives from Dr. Malmstrom's opinion in the Medical Source Statement that Houser has "moderate" limitations in her ability to respond appropriately to usual work situations and to changes in a routine work setting. (R. at 2798.)

It is not clear what Houser believes the ALJ needed to say instead. In the Medical Source Statement, "moderate" is defined as "more than a slight limitation in this area but the individual is still able to function satisfactorily." (R. at 2797.) The ALJ's limitation to "simple, routine and repetitive tasks" that "entail no more than occasional interaction with supervisors, coworkers and the public" (R. at 27) appears *more* restrictive than what Dr. Malmstrom's opinion might otherwise justify with regard to changes in the workplace environment. The Court finds no reversible error here.

### 4. "Severe Memory Deficit"

Houser's third one-sentence attack on the RFC is as follows: "Additionally, the ALJ's RFC also does not account for Dr. Malmstrom's assessment of 'severe memory deficit in immediate visual memory and moderately degraded processing speed.'" (ECF No. 14 at 10 (quoting R. at 2797).) Again, it is not clear what the ALJ should have done differently given that Dr. Malmstrom also concluded that Houser had no limitations in her ability to remember, carry out, and make judgments regarding simple work-related instructions. (R. at 2797.) The ALJ did not err in this regard.

### B. Mental Limitations vs. Simple Work

Houser next mounts a more general attack on the RFC, claiming that the ALJ's

limitation to "simple, routine and repetitive tasks" (R. at 27) is not enough to account for her various mental limitations. (ECF No. 14 at 10–11.) Houser specifically cites to *Jaramillo v. Colvin*, 576 F. App'x 870 (10th Cir. 2014), apparently for the proposition "that moderate limitations must be accounted for in an RFC finding and, consequently, in a dispositive hypothetical to a [vocational expert]." *Id.* at 876. The Tenth Circuit has made similar, and potentially more sweeping, statements in published opinions. *See Chapo v. Astrue*, 682 F.3d 1285, 1290 n.3 (10th Cir. 2012) (suggesting that a limitation to "unskilled work" can never properly substitute for limitations specific to various physical and mental capacities). On the other hand, the Tenth Circuit has more recently noted that whether the limitation to unskilled work appropriately substitutes for a more specific, function-by-function analysis turns on the facts of each case. *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015).

Here, this entire debate seems to have little relevance. Houser claims that being limited to simple, routine, and repetitive tasks and occasional interaction with others "do[es] not adequately take [her] impairments and limitations into account." (ECF No. 14 at 11.) But she nowhere explains which impairments and limitations have been left out. Moreover, Dr. Malmstrom specifically opined that Houser could perform jobs that entail only simple instructions. (R. at 2796–97.) There is no formal Social Security definition for "simple" work, but the definition of "unskilled work" specifically describes it as "simple": "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568(a). Houser therefore cannot plausibly argue that the ALJ somehow misapplied Dr. Malmstrom's opinions in comparison to established Social Security

9

categories. Houser has raised no meritorious argument in this regard.

## IV. CONCLUSION

For the reasons set forth above, the Commissioner's decision is AFFIRMED. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 9th day of August, 2017.

BY THE COURT:

_____
William J. Martinez
United States District Judge